Marcus NASH, Plaintiff,

v.

RESOURCES, INCORPORATED, an Idaho corporation; and Pat Greenman, Defendants.

Civil No. 96–1653–RE.

United States District Court, D. Oregon.

Sept. 19, 1997.

Michael R. Dehner, Michael R. Dehner, PC, Portland, OR, Philip C. Gilbert, Gresham, OR, for Plaintiff.

Richard N. Van Cleave, Kathleen Dent, Davis Wright Tremaine, Portland, OR, for Defendants.

## OPINION

REDDEN, District Judge:

This is an action by Marcus Nash against defendants Resources, Incorporated ("Resources") and Pat Greenman, asserting claims under the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 215(a)(3) ("FLSA") for unpaid overtime wages and retaliation; Or. Rev.Stat. § 652.610 for failure to itemize wage deductions; Or.Rev.Stat. § 652.140 for failure to pay all wages due upon termination; and wrongful discharge. Plaintiff seeks reinstatement, unpaid wages, liquidated damages, civil penalties, and punitive damages.

Nash moves for summary judgment on 1) defendants' liability under the FLSA; 2) defendants' liability for liquidated damages under the FLSA; 3) Resources' liability for civil penalty under Or.Rev.Stat. § 652.150; and 4) defendants' first, second, third and fourth affirmative defenses. Defendants move for summary judgment on 1) the claim for overtime violations under the FLSA; 2) the claim for improper deductions under Or. Rev.Stat. § 652.610; 3) the claim for retaliatory discharge under the FLSA, 29 U.S.C. § 215(a)(3); and 4) the claim for wrongful discharge. Plaintiff also moves to strike defendants' response to plaintiff's Concise Statement of Facts.

Plaintiff's motions for summary judgment are granted. Defendants' motions for summary judgment are denied. Plaintiff's motion to strike, and his alternative motion for leave to file supplemental briefing, are denied.

### Factual Background

Pat Greenman formed Resources in 1987 to do contract work for cable TV systems. Resources entered into an agreement with Paragon Cable ("Paragon") under which Resources agreed to provide Paragon with cable installation services ("the cable agreement").

Under the terms of the agreement with Paragon, neither Resources nor any of its employees, agents or contractors was to be considered or deemed the employee or agent of Paragon. The cable agreement further required that Resources provide and pay for all equipment, tools, materials and other items necessary to perform the installation work, except for materials which became a permanent part of Paragon's cable plant.

Paragon agreed to provide Resources with a work order describing the work to be completed and a schedule. Resources was to "retain the exclusive authority to control and direct the order and assignment of work and the details of the work, [Paragon] being interested only in the results obtained." Resources was responsible for training installers and for designating an "authorized representative to act for and on behalf of [Resources] who shall have authority to oversee and direct day-to-day installation operations." Resources also contracted to carry workers' compensation insurance and to "ensure the proper decorum of its employees and subcontractors."

Plaintiff Marcus Nash worked for Resources in the Portland area from approximately February 12, 1996 until September 25, 1996. He was originally hired as an installer and was paid by the job. In April 1996, Nash was given an Installation Supervisor position, which paid a salary of $100 a day. Nash's duties included supervising the installers on a daily basis and acting as liaison between Resources and Paragon, in conjunction with his supervisor Kevin Albin, Resources' Regional Supervisor for the Portland area.

As a supervisor, Nash was required to be at Paragon's office by 7 a.m. to collect Paragon's work orders and assign them to particular installers. If there was too much work for the installers on hand, Nash did installment work himself; if installers failed to turn up for their assignments, Nash would either do the installation himself or assign another installer, to ensure that all the work orders were completed that day. Nash also assisted installers with technical problems.

Nash turned in "truck sheets," to show the specific jobs each installer had been given. He also turned in daily time sheets that described in detail what he had done each day, how long it took, and with whom he had been in contact. The Regional Supervisor, Albin, met with Nash each day to give him orders about where to go and what to do. According to Pat Greenman's testimony, Nash was authorized to hire and fire Re-

sources employees and contractors, as was Albin.

Albin scheduled the hours and days Nash was expected to work. Nash testified that almost without exception, he worked six days a week, 10–12 hours a day.

Defendants contend that after he was transferred to the supervisor's position, Nash "occasionally" worked as a quality control ("QC") contractor and was paid $9.00 an hour for that work rather than his supervisor's salary of $100 a day. Defendants assert that Nash's job responsibilities "changed on a daily basis," and his "compensation varied depending on his job position and responsibilities." However, Resources kept no written job descriptions for either the supervisor position or a QC contractor position. Resources' president considered quality control part of the supervisor's job.

Although Nash did not authorize Resources to do so, it made frequent deductions from his pay. Nash's paychecks are in varying amounts, with wage deductions rarely itemized or explained. Resources had a company policy of making wage deductions for supervisors' tardy paper work. These deductions are subtracted in different ways— sometimes as a flat amount and sometimes as a percentage of the wages due.

Nash was first suspended, then terminated from his supervisor position on September 25, 1997. In October, Pat Greenman offered Nash his former position as an installer, which Nash refused. Defendants do not deny that Resources 1) refused to pay Nash any of his wages for the last nine days he worked; 2) made deductions from his pay for failures to turn in paperwork; and 3) sometimes paid him $9.00 an hour rather than his $100–per–day salary.

*Standards*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995),

*cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's motion for summary judgment. The authenticity of a dispute is determined by whether there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511. The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

*Discussion*

**The FLSA claim**

The FLSA requires covered employers to provide overtime compensation equal to one and one-half times the regular rate at which an employee is compensated for hours worked in excess of a 40–hour work week. 29 U.S.C. § 207(a)(1). Nash moves for summary judgment on defendants' liability under the FLSA. Defendants contend that they are not liable because Nash was an independent contractor, rather than an employee.

*Was Nash an employee or an independent contractor?*

 The employer-employee relationship subject to the reach of the FLSA is broadly defined. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728, 67 S.Ct. 1473, 1475–76, 91 L.Ed. 1772 (1947). To "employ" means to suffer or permit to work. 29 U.S.C. § 203(g). The words "suffer" and "permit" as used in the statute mean "with the knowledge of the employer." *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981). Thus an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207. *Id.* An "employer" also includes any person acting directly or indirectly in the interest of an employer. 29 U.S.C. § 203(d).

 The FLSA's definition of "employee" has been called the "broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3, 65 S.Ct. 295, 297, 89 L.Ed. 301 (1945). *See also Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 1349–50, 117 L.Ed.2d 581 (1992) (noting the "striking breadth" of the FLSA's definition of "employee"). Thus, when interpreting the FLSA, courts are required to define "employer" and "employee" expansively and to construe exemptions narrowly. *Hale v. State of Arizona*, 967 F.2d 1356, 1362 (9th Cir.1992).

 Whether an employment relationship exists under the FLSA depends on the "economic reality" of the employment situation. *Hale*, 967 F.2d at 1364; *see also Goldberg v. Whitaker House Cooperative. Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936–37, 6 L.Ed.2d 100 (1961). Neither the common law concepts of "employee" and "independent contractor" nor contractual provisions purporting to describe the relationship are determinative of employment status. *Real v. Driscoll Strawberry Associates. Inc.*, 603 F.2d 748, 754–55 (9th Cir.1979). The right to hire and control one's own helpers does not prevent a finding that one is an employee. *Id.* at 755.

 The economic reality test looks to four factors: whether the alleged employer 1) had the power to hire and fire employees, 2) supervised and controlled employee work schedules or conditions of employment, 3) determined the rate and method of payment, and 4) maintained employment records. *Hale*, 967 F.2d at 1364.

 The evaluation of the relationship as a whole, however, depends not on isolated factors but upon the circumstances of the whole activity. *Hale*, 967 F.2d at 1364. Thus, failure to satisfy one of the factors is not automatically fatal to a worker's claim. *Id.*

### Resources' power to hire and fire Nash

 The record does not disclose who hired Nash, but defendants do not dispute that he was hired by Resources. Nor is there any dispute that Greenman had the power to terminate Nash from his supervisor position and offer him the installer position. The person who offered Nash the position as Installation Supervisor was Kevin Albin. Defendants assert that Albin was not a Resources employee but an independent contractor who acted as Resources' Regional Supervisor for the Portland area. However, Albin's employment status is not relevant here. The statutory definition of an "employer" incudes any person acting directly or indirectly in the interest of an employer. 29 U.S.C. § 203(d). Thus Albin is included with Resources as an employer for purposes of this motion.

### Resources' control and supervision of Nash

As Installation Supervisor, Nash was supervised and controlled by Albin, and thus by Resources. His work schedule was set by Resources. Resources required Nash to turn in daily time sheets that described in detail what he had done each day, how long it took, and with whom he had been in contact. Albin met with Nash each day to give him orders about where to go and what to do. There is no question that Resources controlled and supervised Nash.

### Determination of rate and manner of payment

When Nash became an Installation Supervisor, he was told by Resources that his

compensation would be a flat rate of $100 per day. Nash received paychecks directly from Resources. These checks show that Resources made frequent deductions from Nash's pay, as sanctions for late paperwork, and unilaterally decided on occasion to pay him $9.00 an hour rather than his salary of $100 a day. After Nash's employment with Resources ended, Greenman offered to pay Nash the wages he was owed if he would provide Resources with completed installer back-charge forms; Greenman believed Resources was justified in withholding wages from Nash if Nash failed to do what Greenman asked. Greenman's decision not to pay Nash for the last nine days he worked was, by Greenman's testimony, intentional and deliberate. There is no question that Resources determined the rate and manner by which Nash was paid.

### Resources' maintenance of employment records

Resources denies that it maintained records showing the hours Nash worked. Although the evidence is sketchy on what records Resources maintained, the court concludes that, on the basis of Nash's strong evidentiary showing on the other factors, Nash was Resources' employee, and not an independent contractor. Nash was therefore entitled to overtime payments for all hours worked in excess of 40 per week.

### The "Independent Contractors" agreement

To support their argument that Nash was an independent contractor, defendants rely upon an agreement which was presented to Resources personnel in September 1996.

On September 17, 1996, Resources supervisors, including Nash, were sent a document entitled, "Independent Contractors Agreement." A fax cover sheet attached to the document bears the Resources Incorporated letterhead and shows the source of the fax to be "Pat." The message on the front of the cover sheet is:

To all supervisors. Please make copies of the following pages, have everyone (including yourselves) fill out agreement, sign info received sheet and fax back to our office by end of week.

Also, any contractor working, training etc. must have contract paperwork in to us by Thurs. a.m. to receive a check this week. Thank you. Jacque.

Nash has testified that he refused to sign the agreement, and defendants concede that they are unable to locate an agreement signed by Nash.

Resources does not deny that it was planning to withhold pay from its installers and supervisors and terminate them if they did not sign and return the contracts. However, Nash was not terminated for his refusal to sign the independent contractors agreement. The purported agreement has no relevance to the question of Nash's status as an employee.

### Has Nash met his burden of proof on overtime?

Defendants have stipulated that Resources is an employer subject to the requirements of the FLSA. However, they request summary judgment on the FLSA claim on the ground that Nash has failed to produce sufficient proof of overtime.

Every employer subject to the FLSA must make records of the persons employed and of the wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c). A person who willfully violates the recording provisions of the FLSA is subject to a fine of not more than $10,000 or to imprisonment for not more than six months or both. 29 U.S.C. § 216(a). Greenman testified that Resources made no effort to determine the days or the hours Nash worked, considering this Nash's responsibility.

The employee who brings an action for unpaid overtime compensation and liquidated damages has the burden of proving that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 1191–92, 90 L.Ed. 1515 (1946). However, due regard must be given to the fact that it is the employer who has the duty under the FLSA to keep proper records of wages, hours and other conditions and practices of employment, and who is in a position to produce the most probative facts about the nature and amount of work performed. *Id.* at 687, 66 S.Ct. at 1192.

When the employer's records are inaccurate or inadequate, and the employee cannot offer convincing substitutes, the solution is not to penalize the employee by denying recovery. The employee is deemed to have met his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work "as a matter of just and reasonable inference." *Id.* The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. *Id.* at 687–88, 66 S.Ct. at 1192–93. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the award is approximate. *Id.* at 688, 66 S.Ct. at 1192–93. The employer "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with" the FLSA. *Id.*

Once the employee has proved that he has performed work and has not been paid in accordance with the FLSA, the *fact* of damage is certain. The only uncertainty is the *amount* of damage. *Brock v. Seto,* 790 F.2d 1446, 1448 (9th Cir.1986) (emphasis in original). In such a case, "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Brock,* 790 F.2d at 1448, *quoting Mt. Clemens Pottery,* 328 U.S. at 688, 66 S.Ct. at 1193. Thus, unless the employer can provide accurate estimates of hours worked, it is the duty of the trier of fact to draw whatever reasonable inferences can be drawn from the employee's evidence. *Id.,* 790 F.2d at 1448–49.

Because Resources has admitted that it has no records of the days or hours Nash worked, defendants are not entitled to summary judgment on this issue. Nash has produced testimonial evidence that he worked overtime for which he was not paid, and this is sufficient to show the fact of damages. *Id.,* at 1449. Defendants admit that Nash was never paid overtime, and Greenman testified that he deliberately withheld Nash's final paycheck. Defendants are not entitled to summary judgment on whether Nash has produced sufficient evidence of overtime. Determination of the amount of uncompensated overtime must await trial, since it depends on inferences to be drawn by the finder of fact.

*Was Nash retaliated against under 29 U.S.C. § 215(a)(3)?*

Defendants move for summary judgment on this claim, contending that Nash did not engage in protected activity and that Resources did not retaliate against him.

The FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act ..." 29 U.S.C. § 215(a)(3). Nash alleges in his complaint that he was terminated from his employment in retaliation for complaining to Resources about its practice of back-charging installers regardless of fault, and his refusal to participate in the practice.

Defendants argue that the conduct protected under § 215(a)(3) is the making of an administrative complaint or the commencement of a legal proceeding, not mere complaints to the employer. Nash concedes that, during his employment with Resources, he never called or filed a complaint about the charge-back practice with any governmental agency.

The question of what constitutes protected conduct under § 215(a)(3) remains undecided in this jurisdiction. *Knickerbocker v. City of Stockton,* 81 F.3d 907, 912 n. 3 (9th Cir.1996) (noting split in circuits about whether informal complaints to supervisors are protected under the statute, but finding no need to reach the issue). The court need not determine the issue in this case. Regardless of whether Nash's complaint to Albin constituted protected activity, the evidence shows factual issues about 1) whether Nash was terminated or otherwise discriminated against, or merely assigned another position which he refused; and, even assuming a termination, 2) whether it was caused by his complaints about the charge-back system.

The evidence comprises several different versions of how and why Nash came to leave his employment. Defendants contend that Nash voluntarily terminated his contract with Resources after Resources decided to "transfer him out" of the supervisor position into the "comparable position" of installer. The investigator's notes on Nash's claim for unemployment compensation state that according to Pat Greenman, Nash was terminated as part of a reduction in force, and that there had been no wrongdoing by Nash. Greenman testified that he decided to remove Nash from the supervisor position either because he failed to keep up his daily time sheets, or because he failed to submit any charge-back forms.

Nash testified that he was suspended, then terminated and then later offered a position as an installer. He asserts that Greenman told him he had been fired because he refused to back charge installers every time he went to a job site, regardless of whether the installer was at fault. According to the unemployment investigator's notes, Nash said he was discharged for failure to submit time sheets and truck inspection forms. On this record, the court cannot determine whether Nash was terminated or otherwise discriminated against in his employment.

Even if Nash was terminated, there are conflicts in the evidence on whether Nash was terminated for complaining about the practice of back-charging installers. Nash asserts that he complained about Resources' charge-back requirements to both Albin and Greenman. But Albin "didn't care" about the charge-backs, or "just let it go," and the complaints to Greenman occurred when Nash no longer worked for Resources. Before the conversation with Greenman, Nash had been told that he was being terminated for his refusal to keep daily time sheets.

In view of the factual issues on the question of whether Nash was terminated and, if so, whether the termination was retaliation for complaining about Resources' back-charging practices, defendants' motion for summary judgment on this issue is denied.

*Are defendants liable for liquidated damages under the FLSA?*

Nash seeks liquidated damages in an amount equal to his unpaid overtime compensation. Nash moves for summary judgment on this claim.

▪ Any employer who violates the requirement of overtime for hours worked in excess of forty hours per week, 29 U.S.C. § 207, is liable to the employee affected "in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, if the employer

shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 ...

29 U.S.C. § 260. The employer has the burden of showing that the violation of the FLSA was in good faith *and* that the employer had reasonable grounds for believing that no violation took place. *Bratt v. County of Los Angeles,* 912 F.2d 1066, 1071 (9th Cir. 1990) *quoting from Equal Employment Opportunity Commission v. First Citizens Bank,* 758 F.2d 397, 403 (9th Cir.1985) (emphasis in original). Absent such a showing, liquidated damages are mandatory. *Id.*

▪ The statutory requirement of good faith and reasonable grounds is a test with both subjective and objective components. *Id.* To satisfy the subjective good faith component, the employer must show that it had an honest intention of ascertaining what the FLSA required and to act in accordance with it. *Id.* at 1072. The question of "honest intention" is an inquiry that is essentially factual. *Id.*

▪ The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard. *Id.* Determining the reasonableness of the employer's belief involves applying the proper interpretation of the FLSA and supporting regulations to uncontested facts, a legal determination. If the court concludes that the employer's interpretation of the law was incorrect but that its belief in its own inter-

pretation was not unreasonable, this requirement may be met. *Id.*

Pat Greenman testified that he did not know the requirements of the FLSA and never checked into the overtime requirements under Oregon law. This evidence vitiates defendants' assertion that Resources honestly intended to ascertain what was required by the FLSA and act accordingly.

Also damning for the defendants are the cable agreement with Paragon and the attempt to force installers and supervisors to sign the "Independent Contractor Agreement" by threatening to withhold paychecks if they did not.

Greenman denied the existence of the cable agreement under oath. In the cable agreement, Resources agreed to "control and direct the order and assignment of work and the details of the work," to authorize a Resources representative with the "authority to oversee and direct day-to-day installation operations," and to carry workers' compensation insurance. These agreements are inconsistent with defendants' contention that its installers and supervisors were independent contractors supervised and controlled by Paragon.

The cable agreement specifically prohibited Resources from subcontracting the installation work without the prior approval of Paragon. Resources admits that it never obtained such approval. Indeed, Greenman testified that he never represented to Paragon that the installers were independent contractors because he felt it was none of their business.

Defendants' attempt to force installers and supervisors already working for Resources to sign a purported independent contractor agreement, under threats to withhold paychecks, indicates that defendants felt some after-the-fact action was necessary to shore up their assertion that their employees were actually independent contractors. The sudden insistence that installers and supervisors sign the agreement strongly suggests that defendants learned, or suspected, that their installers and supervisors did not meet the criteria for independent contractors. On the basis of this evidence, the court concludes that defendants have not met the good faith requirement.

Nor have the defendants shown that their belief that Nash was an independent contractor was reasonable. Greenman's attempt to conceal the existence of the cable agreement, while taking the position that Resources' installers and supervisors were independent contractors working for Paragon, leads to the conclusion that defendants were duplicitous. Nash's motion for summary judgment on this claim is granted.

**The claim for penalties under Or.Rev.Stat. § 652.150**

Or.Rev.Stat. § 652.150 provides a civil penalty for failure to pay wages on termination of employment:

> If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided that in no case shall such wages or compensation continue for more than 30 days from the due date ....

Defendants do not dispute that they intentionally withheld Nash's final paycheck, and that they have not paid those wages to this day.

*Was Nash an employee under the meaning of Chapter 652?*

Nash has moved for summary judgment on his claim for penalties under Or.Rev. Stat. § 652.150. Defendants contend that Nash is not an employee under the meaning of this statute.

Federal regulations and case law are persuasive authority when considering whether an employment relationship exists for purposes of Chapters 652 and 653 of Oregon Revised Statutes. *See Northwest Advancement v. Bureau of Labor*, 96 Or.App. 133, 772 P.2d 934, *rev. den.*, 308 Or. 315, 779 P.2d 618 (1989). The court concludes, based on its analysis of the FLSA claim, that Nash was an employee for purposes of Chapter 652. Nash's motion for summary judgment on this claim is granted.

**The claim under Or.Rev.Stat. § 652.610**

Defendants move for summary judgment on this claim, contending that Resources did not make "deductions" within the meaning of § 652.610. Defendants also contend that they are entitled to summary judgment because Nash has failed to carry his burden of proof in identifying the allegedly improper deductions.

*Did defendants violate Or.Rev.Stat. § 652.610?*

Section 652.610(3) provides:

No employer may withhold, deduct or divert any portion of an employee's wages unless:

(a) The employer is required to do so by law;

(b) The deductions are authorized in writing by the employee, are for the employee's benefit, and are recorded in the employer's books;

(c) The employee has voluntarily signed an authorization for a deduction for any other item, provided that the ultimate recipient of the money withheld is not the employer, and that such deduction is recorded in the employer's books;

(d) The deduction is authorized by a collective bargaining agreement to which the employer is a party; or

(e) The deduction is made from the payment of wages upon termination of employment and is authorized pursuant to a written agreement between the employee and employer for the repayment of a loan made to the employee by the employer ...

Greenman admitted in his deposition that when Nash was terminated, Resources withheld all of Nash's wages for the last nine days he worked, an amount "in the $900 range." He testified that this was done because he felt Nash had not performed his supervisor's duties adequately. Greenman offered to pay Nash the withheld amount if he submitted installer charge-back forms.

Greenman testified that Resources had a company policy of withholding wages whenever Resources decided paperwork had not been done on time. Some of Nash's paychecks show deductions of $40 as a "late fee." Another check shows a deduction of $30.00 which is annotated, "less 10%, late charge." One paycheck shows $280.00 and is annotated "Paragon supervisor," in contrast to other checks which say "Supervisor Pay." Many of the checks show "supervisor pay" in odd amounts ($540, $280, $150, $144, $474.40) with no explanation of why Nash was not paid his $100–a–day salary.

Defendants admit that they sometimes unilaterally reduced Nash's wages to $9.00 an hour rather than his salary of $100 a day. Although Resources contends that this was to show that Nash was doing QC work, Greenman testified that Installment Supervisors who did quality control work were to be paid $100 a day, while only *installers* who were requested by an Installment Supervisor to do quality control work on an ad hoc basis were to be paid $9.00 an hour.

It is undisputed that none of these deductions falls within the exceptions set out in Or.Rev.Stat. § 652.610(3). However, defendants argue that the only "deductions" were in fact "reductions" which reflected the $9.00 an hour rate for quality control work. This explanation neither conforms with the evidence in the record nor states a plausible statutory distinction.

The court concludes that, as a matter of law, defendants violated Or.Rev.Stat. § 652.610. *See Garvin v. Timber Cutters, Inc.,* 61 Or.App. 497, 501, 658 P.2d 1164 (1983) (when none of the exceptions to the general prohibition of Or.Rev.Stat. § 652.610(3) applies, defendant is prohibited by statute from withholding plaintiff's wages). Nash is therefore entitled to the remedy for that violation provided at Or.Rev. Stat. § 652.615, which includes damages, attorney fees, and costs. Defendants' motion for summary judgment on this issue is denied.

*Has Nash identified the allegedly improper deductions?*

Or.Rev.Stat. § 652.610(1) requires all employers who withhold any sum of money, for any purpose, from the wages, salary or commission earned by an employee, to provide the employee every payday with "a statement sufficiently itemized to show the amount and purpose of such deductions made during the respective period of service which said payment covers." Under the terms of this statute, it is the employer's duty to

identify the amount and purpose of any deductions, not the employee's. The evidence shows that Resources did not provide Nash with such a statement.

■ The same analysis used for the overtime claims under the FLSA applies here. Resources had a statutory duty to disclose to Nash the amount and purpose of any deductions. Resources is therefore the party in the best position to produce the facts about these deductions. If Resources' records are inaccurate or nonexistent, Nash should not be penalized by denying him any recovery. Instead, he should be required to show that deductions were in fact taken from his paychecks in violation of the statute. This he has done. If Nash's evidence of deductions is only approximate, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the statute]." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). Defendants' motion for summary judgment on this issue is denied.

**The common law wrongful discharge claim**

Defendants move for summary judgment on Nash's wrongful discharge claim, asserting that 1) the claim is preempted; 2) plaintiff was not discharged; and 3) the discharge, if any, was not wrongful. The court concludes that the claim is not preempted, and that disputed facts preclude a determination that Nash was not discharged or that the discharge was not wrongful.

*Preemption*

In a previous opinion in this case, the court held that a common law claim for wrongful discharge was not precluded by Or.Rev.Stat. § 652.355. *Nash v. Resources, Inc. et al.*, Civ. No. 96–1653–RE (Order, April 2, 1997). The court declines to revisit the issue.

■ Nor is the court persuaded that the FLSA preempts Nash's common law claim for wrongful discharge. The Supreme Court has "long presumed that Congress does not cavalierly preempt state law causes of action." *Medtronic, Inc. v. Lohr*, —— U.S. ——, ——, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996). Thus, preemption will not lie

unless it is the "clear and manifest purpose of Congress." *CSX Transportation Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 1745, 123 L.Ed.2d 387 (1993).

A state law is preempted when 1) Congress has expressly superseded state law; 2) Congress has regulated a field so extensively that a reasonable person would infer that Congress intended to supersede state law; or 3) when there is a conflict between federal and state law. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

None of these conditions is met here. Congress did not expressly supersede the common law of wrongful discharge in the FLSA; it has not so extensively regulated the field of wrongful discharge that the court could infer an intention to supersede the common law; and there is no conflict between a common law claim for wrongful discharge and the FLSA. Nor does a common law claim for wrongful discharge stand in the way of enforcing the remedial scheme of the FLSA. *See Stone v. City and County of San Francisco*, 968 F.2d 850, 862 (9th Cir.1992). Nash's common law wrongful discharge claim is not preempted by the FLSA.

*Was Nash wrongfully discharged?*

■ The different versions of how and why Nash came to leave his employment have already been discussed and will not be repeated here. The evidence shows factual disputes about whether Nash quit, was demoted, or was terminated. On this record, the court cannot determine whether Nash was discharged at all, much less whether he was wrongfully discharged. Defendants' motion for summary judgment on the wrongful discharge claim is denied.

*Defendants' affirmative defenses*

Defendants' first affirmative defense is that defendants acted reasonably, in good faith and with reasonable grounds for believing that their actions were not in violation of the FLSA. For the reasons discussed above, Nash's motion for summary judgment on this defense is granted.

Defendants' second affirmative defense is that in all matters pertaining to plaintiff, defendants acted reasonably, in good faith, and with reasonable grounds for believing that their actions were not in violation of Or.Rev.Stat. § 652.220. Nash has withdrawn this claim. Consequently, his motion for summary judgment on this affirmative defense is denied as moot.

Defendants' third affirmative defense is that defendants acted reasonably, in good faith and with reasonable grounds for believing that they paid plaintiff all compensation to which he was entitled, and that they did not willfully fail to pay plaintiff's wages in violation of Or.Rev.Stat. § 652.150. For the reasons discussed above, Nash's motion for summary judgment on this defense is granted.

Defendants' fourth affirmative defense is failure to state facts sufficient to constitute a claim for wrongful discharge because plaintiff was an independent contractor. Because the court has found that Nash was an employee, not an independent contractor, Nash's motion for summary judgment on this affirmative defense is granted.

## Conclusion

The court concludes that Nash was Resources' employee under the meaning of the FLSA and Or.Rev.Stat. § 652.150, rather than an independent contractor. Resources having stipulated that it is an employer subject to the requirements of the FLSA, the court concludes that, as a matter of law, Resources was required to compensate Nash for overtime.

Every employer subject to the FLSA is required to make records of the persons employed and of the wages, hours and other conditions and practices of employment. Resources has admitted that it made no effort to determine the days or the hours Nash worked. An employee who brings an action for unpaid overtime compensation and liquidated damages has the burden of proving that he performed work for which he was not properly compensated. However, under the analysis of *Mt. Clemens Pottery,* Nash has carried his burden by producing evidence that he worked six days a week, 10–12 hours a day while he was a supervisor. Conse-

quently, defendants are not entitled to summary judgment on this issue.

There are factual issues on whether and why Nash was discharged. These factual issues preclude summary judgment in favor of defendants on the questions of whether Nash was retaliated against under 29 U.S.C. § 215(a)(3) and whether Nash was wrongfully discharged.

Unless an employer can prove that a violation of the FLSA was in good faith and the employer had reasonable grounds for believing that no violation took place, an award of liquidated damages under the FLSA is mandatory. There is no dispute that defendants did not familiarize themselves with the requirements of federal or state overtime laws, and thus no factual question as to good faith. The court concludes as a matter of law that defendants did not have reasonable grounds for believing they had not violated the FLSA. Nash is entitled to liquidated damages.

Defendants do not dispute that they withheld all of Nash's wages for the last nine days he worked, that they made deductions from his wages for filing late paperwork, and that when they determined that he had done QC work, they reduced his wages to $9.00 an hour, even though Greenman testified that supervisors doing QC work were to be paid their salary of $100 a day. This conduct constituted a violation of Or.Rev.Stat. § 652.610 and Nash is entitled to the remedy provided at Or.Rev.Stat. § 652.615.

Defendants failed to disclose to Nash the amount and purpose of the deductions taken from his wages as required by Or.Rev.Stat. § 652.610(1). They are therefore not entitled to summary judgment on the ground that Nash cannot produce evidence substantiating the amount and purpose of these deductions.

On the basis of the preceding analysis of plaintiff's claims under the FLSA, Or.Rev. Stat. §§ 652.220 and 652.150, and wrongful discharge, plaintiff is entitled to summary judgment on defendants' affirmative defenses.

Plaintiff's motions for partial summary judgment are granted. Defendants' motions for partial summary judgment are denied.

Plaintiff's motions to strike or, alternatively, to file a supplemental brief are denied.