**Silvia CONTRERAS, Plaintiff,**

v.

**CORINTHIAN VIGOR INSURANCE BROKERAGE, INC., a California corporation, Defendant.**

No. C–98–2701 SC.

United States District Court, N.D. California.

June 20, 2000.

---

Christopher Ho, Marielena Hincapie, The Employment Law Center, Legal Aid Society of San Francisco, San Francisco, CA, for plaintiff.

R. Richard Williams, Santa Rosa, CA, for defendant.

*ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS*

CONTI, District Judge.

## I. *INTRODUCTION*

In the above captioned case, Plaintiff Silvia Contreras ("Contreras") brings an action against her former employer, Defendant Corinthian Vigor Insurance Brokerage, Inc. ("Corinthian"), for retaliation in violation of Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 – 219 ("FLSA"). Contreras seeks declaratory and injunctive relief, compensatory and punitive damages, attorney's fees, and costs of suit. In the instant motion, Contreras moves for summary judgment or, in the alternative, for summary adjudication of claims.

## II. *BACKGROUND*

Plaintiff Contreras was employed by Ms. Lindsey A. Cameron ("Cameron"), Defendant Corinthian's owner, from approximately June 1995 to January 1997, and by Corinthian from approximately January 6, 1997 to March 25, 1997. She worked as a secretary for Corinthian, a company which sells commercial insurance to truck drivers.

Contreras alleges that Corinthian caused her to be reported to the Immigration and Naturalization Service ("INS"). Contreras further alleges that this report constituted retaliation for her prior filing of a claim against Corinthian for unpaid wages and overtime pay pursuant to Section 98 of the California Labor Code with the California Department of Industrial Relations, Division of Labor Standards Enforcement ("California Labor Commissioner"). As a result of the communication with the INS, Contreras was arrested by the INS four days after a pre-hearing conference with the California Labor Commissioner regarding her wage and overtime claim, and held in their custody for a

week. Contreras alleges that Corinthian's purpose in reporting her was to avoid liability on her wage and overtime claims. Contreras has therefore filed suit against Corinthian for retaliation in violation of the FLSA seeking declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs, for the harm she suffered as a result of Corinthian's actions.

On March 23, 1999, Corinthian filed a Voluntary Chapter 7 Petition in the United States Bankruptcy Court for the Northern District of California. Under 11 U.S.C. § 362(a) Contreras' action against Corinthian was automatically stayed. On August 16, 1999, after the estate of the debtor had been fully administered, the Bankruptcy Court issued a Final Decree closing the Chapter 7 case.

Now before the Court is Contreras' Motion for Summary Judgment or, in the Alternative, for Summary Adjudication of Claims. Corinthian has not filed an opposition. Instead, counsel for Corinthian wrote to the Court that, as a result of the bankruptcy, he no longer has a client, and thus "has no choice but to not participate further in the proceedings." (Letter from Williams to the Court of 3/3/00, at 1.)

### III. *LEGAL STANDARD*

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994). Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on the mere allegations of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See* FedR. Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, to withstand a proper motion for summary judgment, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact be-cause they may reasonably be in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, if the nonmoving party has the burden of proof on a given issue, the moving party can prevail by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

If the nonmoving party fails to oppose a summary judgment motion, "the district court is not required to search the record sua sponte for some genuine issue of material fact. It may rely entirely on the evidence designated by the moving party showing no such triable issue." 14 William W. Schwarzer et al., *Federal Civil Procedure Before Trial* ¶ 330 (1999), citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir.1992).

### IV. *DISCUSSION*

#### A. *Corinthian's Bankruptcy Does Not Bar This Suit*

██ A corporation that has been liquidated pursuant to Chapter 7 of the Bankruptcy Code does not receive a discharge from debt. *See* 11 U.S.C. § 727(a)(1). In addition, any dissolution of a corporation must be effectuated under state law, since the Bankruptcy Code does not provide for the dissolution of corporations. *See N.L.R.B. v. Better Building Supply Corp.*, 837 F.2d 377, 379 (9th Cir. 1988); 6 *Collier on Bankruptcy* § 727.01[3] (King ed., 15th ed. rev.1998).

Counsel for Corinthian wrote to the Court that Corinthian was "out of business and is inactive." (Letter from Williams to

the Court of 3/3/00, at 1.) However, a liquidation alone does not dissolve a corporation. *See Better Building Supply Corp.*, 837 F.2d at 379. Corinthian has provided no evidence that Corinthian has been dissolved pursuant to Cal.Corp.Code §§ 1901(a) and 1905, which require that a certificate of dissolution be filed with the Secretary of State. According to Contreras, no such certificate has been filed on behalf of Corinthian. (Declaration of Christopher Ho, Ex. B.)

Even if Corinthian has been dissolved, California law provides that a corporation continues to exist even after dissolution for the purposes of, *inter alia*, "prosecuting and defending actions by or against it and enabling it to collect and discharge obligations." Cal.Corp.Code § 2010(a). Furthermore, Cal.Corp.Code § 2011(a)(1) provides for the enforcement of causes of action against dissolved corporations.

■ Therefore, Corinthian's status as "out of business and inactive" does not insulate it from the present action.

## B. *Corinthian Violated the FLSA's Anti-Retaliation Provisions*

■ The FLSA provides, in pertinent part, that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter...." 29 U.S.C. § 215(a)(3). To demonstrate retaliation under this provision of the FLSA, the Ninth Circuit has held that a plaintiff must show that her protected activities were a "substantial factor" in the complained of adverse employment action. *See Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996). Protected activities are a "substantial factor" where the adverse actions would not have been taken "but for" the protected activities. *See id.*

■ Where a plaintiff has produced direct evidence that her employer was motivated by retaliatory animus, she may proceed under the "mixed motive" proof scheme, under which the burden shifts to the defendant to prove that it would have taken the adverse action even if the plaintiff had not engaged in protected activities. *See id.* Alternatively, where a plaintiff relies on circumstantial evidence to prove that retaliatory animus motivated the employer to take the disputed adverse employment action, she must proceed under the conventional burden shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

To make out a prima facie case under the *McDonnell Douglas* scheme, a plaintiff must show that: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered an adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir.1997). Once a plaintiff has established a prima facie case, the burden then shifts to the employer to produce evidence of a legitimate reason for the adverse employment action. If the employer offers such a reason, the burden then shifts back to the plaintiff to produce evidence that the employer's proffered reason for the challenged action is pretextual. *See id.* Because Contreras has produced circumstantial evidence only, the Court will proceed under the *McDonnell Douglas* burden shifting analysis.

### 1. *Protected activity*

To make out a prima facie case, Contreras must first demonstrate that she engaged in activity protected by the FLSA. Protected activity includes filing a complaint or instituting a proceeding "under or related to" the FLSA. *See* 29 U.S.C. § 215(a)(3). The Ninth Circuit has defined these terms in the following way: "As we read the statute, complaints filed "under" the FLSA are those complaints provided for in the Act, i.e., those com-

plaints filed with the Department of Labor or the federal court as specified in the Act. Complaints that are not "under" the FLSA but are "related to" it, on the other hand, are those complaints filed outside of court and the Department of Labor that relate to the subject matter of the FLSA...." *Lambert v. Ackerley,* 180 F.3d 997, 1004–05 (9th Cir.1999).

■ Here, Contreras filed a complaint with the California Labor Commissioner against Corinthian pursuant to Cal.Lab. Code §§ 1197 and 1198 for unpaid wages and overtime pay. (Declaration of Marielena Hincapie ("Hincapie Decl."), Ex. H.) A pre-hearing conference was held on June 13, 1997, and a full hearing on October 6, 1997. (Declaration of Nancy Kleiber, ¶¶ 5, 7.)[1] Because Cal.Lab.Code §§ 1197 and 1198 are substantively similar to the protections afforded by the FLSA, Contreras' actions constitute the filing of a complaint and institution of proceedings "related" to the FLSA. *See* 29 U.S.C. §§ 206 – 207; *Rivera v. Installation Club System,* 623 F.Supp. 269, 270 (D.P.R.1985).

For these reasons, the Court finds that Contreras engaged in protected activities under the FLSA when she filed a complaint and instituted proceedings before the California Labor Commissioner for unpaid wages and overtime pay.

**2. *Adverse employment action***

To make out a prima facie case, Contreras must also demonstrate that she suffered an adverse action by her employer. It is undisputed that Cameron called the INS on June 16, 1997 to report Contreras' undocumented alien status. (Answer at ¶ 5.) It is also undisputed that, on September 30, 1997, Cameron completed a Statement of Claimant or Other Person at the San Rafael office of the Social Security Administration ("SSA") reporting that Contreras was using a fraudulent Social Security number and was illegally in the United States. (Hincapie Decl., Ex. M; Deposition of Lindsey Cameron ("Cameron Depo."), 101:2 – 14.) Finally, it is undisputed that on that same day, Bijan Khojasteh ("Khojasteh"), Corinthian's Chief Executive Officer, Secretary, and Chief Financial Officer, spoke with a clerk at the SSA office in Oakland about Contreras' false Social Security number. (Deposition of Bijan Khojasteh ("Khojasteh Depo."), 204:18 – 205:23.)

■ Even though Contreras voluntarily terminated her employment with Corinthian on March 25, 1997, before she filed her wage claims and before Corinthian reported her to the INS and the SSA, Contreras was still protected by the FLSA against adverse actions by Corinthian. *See Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 147 (6th Cir.1977) (holding that a former employee "is as much in need of the § 15 shield from retaliation as workers still on the job or workers who have been discharged for their protected activities"). In addition, because a report to the INS or the SSA of a former employee's undocumented status clearly affects the former employee's ability to maintain employment, such actions constitute adverse actions under the FLSA. *See id.* (noting that the FLSA prohibits an employer from "black listing" a former employee for filing a wage claim). *See also Sure–Tan, Inc. v. National Labor Relations Board,* 467 U.S. 883, 895–96, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) (holding that corporation committed an unfair labor practice by reporting undocumented alien employees to the INS in retaliation for participating in union activities).

Therefore, the Court finds that Corinthian's reporting of Contreras to the INS and the SSA constituted an adverse employment action.

**3. *Causal connection***

■ The third showing required to make out a prima facie case of retaliation is a causal connection between the employee's protected activity and the employer's adverse employment action. In general,

---

1. The Court grants Contreras' Request for Judicial Notice of this declaration.

an adverse action "following close on the heels of protected activity can support an inference of retaliation." *Knickerbocker*, 81 F.3d at 912.

■ Here, the California Labor Commissioner held a pre-hearing conference regarding Contreras' wage claims on Friday, June 13, 1997. (Hincapie Decl., Ex. I.) On Monday, June 16, the very next business day, Cameron notified the INS of Contreras' undocumented status. Then, on Tuesday, June 17, the INS detained Contreras. (Hincapie Decl., Ex. O.) Given that Contreras had not been working for Corinthian for almost three months at this point, the fact that Cameron called the INS immediately after the pre-hearing conference is sufficient to create an inference of a causal connection between the pre-hearing conference and the report to the INS.

Similarly, Cameron and Khojasteh notified the SSA of Contreras' use of a false Social Security number only days before the administrative hearing was to be held on October 6, 1997. Specifically, both independently contacted the SSA on September 30, 1997. Again, there appears to be no other reason for them to have contacted the SSA apart from the fast approaching hearing. Thus, the Court finds that the evidence is sufficient to infer a causal connection between the reports to the SSA and the upcoming administrative hearing.

### 4. *Corinthian's proffered reasons are pretextual*

Corinthian has not filed an opposition to the instant motion. However, Contreras has referenced several explanations that Cameron and Khojasteh have advanced during the course of the litigation to justify their reports to the INS and the SSA. The Court agrees with Contreras that these reasons are pretextual.

■ Cameron and Khojasteh have argued that they were merely verifying and clarifying information they had regarding Contreras' Social Security number, that they were required to report her undocu-mented status, and that they were just curious. None of these reasons are persuasive. First, as of March 25, 1997, Contreras no longer worked for Corinthian. Their sudden concern with her status as an undocumented worker simply does not make sense outside the context of her wage claims. Second, both Cameron and Khojasteh admitted during their depositions that as of January 1997 they had reason to believe that Contreras was an undocumented alien using a false Social Security number, yet they continued to employ her and did not verify this information. (Khojasteh Depo., 197:13 – 198:5; Cameron Depo., 128:20 – 129:15.) If they were truly curious, wanted to verify the information, or were reporting Contreras out of concern for the legal requirements relating to the hiring of undocumented workers, they surely would have done so earlier, while Contreras was still in their employ and before she filed her wage claims. Their reporting of Contreras to the INS and the SSA so close in time to both the pre-hearing conference and the full administrative hearing cannot be anything other than an attempt to retaliate against Contreras for her assertion of claims under the FLSA.

Having found Corinthian's explanations unpersuasive, the Court finds that Contreras' protected activities were a substantial factor in causing her to be reported to the INS and the SSA, and that but for her filing and prosecution of her FLSA claims, Cameron and Khojasteh would not have notified the INS and the SSA of her undocumented status.

### V. *CONCLUSION*

For the foregoing reasons, it is hereby ORDERED that:

(1) Plaintiff Silvia Contreras' Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims is GRANTED;

(2) The parties shall appear for a status conference on July 7, 2000 at 10:00 a.m.

IT IS SO ORDERED.